1
2

                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF SOUTH CAROLINA
                           CHARLESTON DIVISION

3

UNITED STATES OF AMERICA        :

4                                :

        vs.                      :

5                                :

BRANTLEY DENMARK THOMAS, III  :     2:17 CR 1150

6

7

8

        Plea in the above-captioned matter held on Tuesday,

9

January 16, 2018, commencing at 11:00 a.m., before the

10

Hon. David C. Norton, in Courtroom II, United States

11

Courthouse, 83 Meeting Street, Charleston, South Carolina,

12

29401.

13

14

15

APPEARANCES:

16

                    NATHAN WILLIAMS, ESQ., Office of the U.S.
17                  Attorney, P.O. Box 978, Charleston, SC,
                    appeared for the Government.
18
                    MATTHEW R. HUBBELL, ESQ., 134 Meeting St.,
19                  Charleston, SC, appeared for defendant.

20

21

22

23          REPORTED BY DEBRA L. POTOCKI, RMR, RDR, CRR
                           P.O. Box 835
24                    Charleston, SC  29402

25

1          MR. WILLIAMS:  Morning, Your Honor, may it please the

2    Court.  We're here on docket No. 2:17-CR-1150, United States

3    of America versus Brantley Denmark Thomas, III.  Your Honor,

4    he's here with his attorney, Mr. Hubbell.

5       Your Honor, we have previously filed both an information

6    and a plea agreement in the case, I believe, with the

7    magistrate.  A waiver was filed regarding the information in

8    this case, with a presentment to a grand jury.  And so we're

9    scheduled today for a guilty plea to all counts of the filed

10   information.  And, as I said, there's a plea agreement in

11   place.

12          THE COURT:  Okay.  So the waiver has already been

13   accepted by the Magistrate Judge; is that what you're telling

14   me?

15          MR. WILLIAMS:  Yes, Your Honor, I confirmed it was

16   signed and filed.

17          THE COURT:  So all we need is a guilty plea, not a

18   waiver.

19          MR. HUBBELL:  Yes, sir.

20          THE COURT:  Come on up and be sworn for me,

21   Mr. Thomas.

22       (Defendant was duly sworn.)

23          THE COURT:  Mr. Thomas, it's my understanding that

24   you wish to plead guilty to the charges in this information,

25   is that correct?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Now, before I can accept your plea, there

3   are a number of questions I'm going to ask you.  If you don't

4   understand my questions or need to talk to Mr. Hubbell at any

5   time, let me know.

6          THE DEFENDANT:  Okay.

7          THE COURT:  The reason for that is now that you've

8   been sworn, your answers to my questions will be subject to

9   penalties of perjury or lying under oath.

10          THE DEFENDANT:  I understand.

11          THE COURT:  Mr. Thomas, how old are you?

12          THE DEFENDANT:  Sixty-one.

13          THE COURT:  How far did you go in school?

14          THE DEFENDANT:  College.

15          THE COURT:  Have you taken any drug or medication or

16   consumed any alcoholic beverages in the last 24 hours?

17          THE DEFENDANT:  Just normal medications.

18          THE COURT:  Prescription medications by your doctor?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  And do those medications have any -- do

21   they interfere in any way of your understanding what's going

22   on here this morning?

23          THE DEFENDANT:  No, sir.

24          THE COURT:  Have you ever been treated for drug

25   addiction or mental illness?

1          THE DEFENDANT:  No.

2          THE COURT:  Do you understand what's happening here

3    this morning?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Can you tell me in your own words, why

6    are you here this morning?

7          THE DEFENDANT:  I'm here -- the information in the --

8    whatever I did is accepting the prosecution's information

9    that's before you.

10          THE COURT:  Mr. Hubbell, do you have any doubt as to

11    Mr. Thomas' competence to enter a plea here this morning?

12          MR. HUBBELL:  No, I don't, Your Honor.

13          THE COURT:  It appears to me that you are competent

14    to plead to these charges, and I so find for the purposes of

15    the record.

16      Now, have you had plenty of time to discuss your case with

17    your lawyer?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Are you satisfied with the job he's done

20    for you?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Has he done everything you asked him to

23    do?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Has he failed to do anything you asked

1  him to do?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  Do you understand that under the

4  constitution and laws of the United States, you're entitled to

5  a jury trial on these charges, if you want one?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  You understand if you wanted a jury

8  trial, you'd have the right to the assistance of your lawyer

9  for your defense on the charges contained in this information

10  17-1150?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  You also understand if you wanted a jury

13  trial, at your trial you'd be presumed to be innocent, and the

14  Government's required to prove you guilty by competent

15  evidence and beyond a reasonable doubt before a jury could

16  find you guilty?

17          THE DEFENDANT:  Yes, sir.

18          MR. WILLIAMS:  You also understand if you wanted a

19  jury trial, you would not have to prove that you were innocent

20  at your trial?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  You also understand that if you wanted a

23  jury trial, during the course of your trial the witnesses for

24  the Government would have to come into court, and they would

25  testify in your presence, and your lawyer could cross-examine

1  the Government's witnesses, object to the Government's

2  evidence and offer evidence in your defense?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  You also understand if you wanted a jury

5  trial, you'd have the right to testify to the jury, if you

6  wanted to?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Do you understand you have a

9  constitutional right not to testify, if you don't want to?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  You also understand if you chose not to

12 testify at your trial, the jury could not think you were

13 guilty based on the fact that you had exercised your

14 constitutional right not to testify?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Do you also understand if you wanted a

17 jury trial, you'd have the right to issuance of subpoenas to

18 compel the attendance of witnesses to testify in your defense?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  If you plead guilty here this morning and

21 I accept this plea, you understand you're going to waive your

22 right to a jury trial, the other rights we've just discussed,

23 there's not going to be a jury trial, and I am going to

24 sentence you on the basis of this guilty plea, after I

25 consider your presentence report?

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  You also understand if you plead guilty,

3    you're going to waive your right not to incriminate yourself,

4    since I'm going to ask you some questions about what you did,

5    in order to satisfy myself you're guilty, and you'll have to

6    acknowledge you're guilty of these charges.

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Do you also understand what you're

9    pleading guilty to is a felony, and as such, you can lose some

10   of your valuable civil rights, such as the right to vote or

11   right to ever possess any firearm or bullet?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  You also understand if you plead guilty

14   and I accept your plea, you're going to be required to make

15   restitution to the victim or victims of your acts, either by

16   payment of money or in personal services as directed by the

17   Court?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  You understand if restitution or personal

20   services is ordered, the failure to comply could be the basis

21   of revoking your probation or supervised release?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Having discussed your rights with you,

24   Mr. Thomas, do you still wish to plead guilty?

25          THE DEFENDANT:  Yes, sir, I do.

1          THE COURT:  And have you received a copy of the

2     information, that is, the written charges made against you in

3     this case?

4          THE DEFENDANT:  I have, sir, yes.

5          THE COURT:  Have you had plenty of time to go over

6     the information with your lawyer, plus whatever records,

7     reports and stuff, I'm sure there's a lot of paperwork that

8     the Government's given your lawyer?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  You've gone over all that with him?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  All right.  You're pleading guilty to

13     counts one through 20.  Count one is fraud and embezzlement

14     from a federally-funded program.  Counts two through ten,

15     money laundering.  Counts 11 through 20 is honest services

16     wire fraud.

17          Do you understand that if you went to trial on count one,

18     which is the fraud and embezzlement, that the Government would

19     have to prove these elements beyond a reasonable doubt before

20     a jury could find you guilty.  That in or around October 12th

21     until December -- October 2012 till December 2016, here in

22     South Carolina, you were, at the time alleged, an agent of a

23     state or local government that received, in any one-year

24     period, benefits in excess of $10,000 under a federal program

25     involving any form of federal assistance; and, two, that you

1    embezzled, stole, obtained by fraud, without authority

2    knowingly converted to the use of any person other than the

3    rightful owner, or intentionally misapplied property valued at

4    $5000 or more owned by or under the care, custody or control

5    of that agency.

6        Do you understand the charge against you in count one?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Counts two through ten are the money

9    laundering charges.  Do you understand the Government would

10   have to prove these elements beyond a reasonable doubt before

11   a jury could find you guilty.  That on the dates of the

12   information, and here in South Carolina, you, number one,

13   engaged in a monetary transaction which had some effect on

14   interstate and foreign commerce; and, number two, the monetary

15   transaction involved criminally-derived property with a value

16   greater than $10,000 that was derived from a specified

17   unlawful activity, that is, fraud and embezzlement from a

18   federally-funded program; and, number three, that you did so

19   knowingly.

20       Do you understand the charges against you in counts two

21   through ten?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  In counts 11 through 20, which is honest

24   services wire fraud, the Government would have to prove these

25   elements beyond a reasonable doubt before a jury could find

1    you guilty.  That from March 2010 until November 2016, here in

2    South Carolina, you, number one, devised or intended to devise

3    a scheme to defraud or for obtaining money or property by

4    means of wire, radio or television communications, in

5    interstate or foreign commerce, by any writings, signs,

6    signals, pictures or sounds; number two, that for the purposes

7    of executing the scheme, you transmitted or caused to be

8    transmitted by means of wire, in interstate or foreign

9    commence, any writings, signs, signals, pictures or sounds;

10   number three, that the scheme was to deprive another of that

11   person's right to receive honest services from the defendant

12   through kickbacks supplied by a third party who has not been

13   deceived; number four, that the payor provided a kickback to

14   the defendant, you, a public official, intending that you

15   would thereby take favorable official acts or omissions that

16   the official would not otherwise take; and, number five, that

17   you, a public official, accepted the kickback in exchange for

18   official acts or omission to benefit the payor.

19       Do you understand the charges against you in counts 11

20   through 20?

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  The Court finds Mr. Thomas fully

23   comprehends and understands the nature of the charges against

24   him, and generally what elements the Government would have to

25   prove if we had a trial.

1          Now, do you understand that the maximum possible penalty

2     for count one is ten years, $250,000 fine, three years

3     supervised release and a special assessment of $100?

4               THE DEFENDANT:  Yes, sir.

5               THE COURT:  Now, counts two through ten, you

6     understand the maximum penalties for counts two through ten is

7     ten years in jail, $250,000 fine, or twice the

8     criminally-derived property involved in the transaction, three

9     years supervised release and a special assessment of $100?

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  Counts 11 through 20 is maximum 20 years

12    in jail, $250,000 fine, three years supervised release and

13    $100 special assessment?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  Per count.  Now, have you and your lawyer

16    talked about the sentencing guidelines?

17              THE DEFENDANT:  Yes, sir, we have.

18              THE COURT:  Have you talked about how the Sentencing

19    Guidelines might be applied in your case?

20              THE DEFENDANT:  Yes, sir.

21              THE COURT:  You understand that nobody is going to be

22    able to determine the guidelines for your case until after

23    your presentence report has been completed and you and the

24    Government have had an opportunity to challenge the probation

25    officer's report?

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  You also understand after your guidelines

3   have been determined, the Court has the authority, under some

4   circumstances, to depart from those guidelines or to vary from

5   those guidelines, either above those guidelines or below those

6   guidelines?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  You understand that at sentencing the

9   Court will examine the factors of 18 United States Code

10  3553(a), which could result in the imposition of a sentence

11  either greater than or lesser than the guidelines sentence?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  You also understand under some

14  circumstances the Government -- you or the Government -- may

15  have the right to appeal any sentence you might get?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  You understand in the federal system

18  parole has been abolished, and if you're sentenced to prison

19  you'll not be released on parole?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  You also understand that if the sentence

22  is more severe than you expect it to be, you're still bound by

23  this guilty plea and you have no right to withdraw it.

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  You also understand if you plead guilty,

1    the law requires you serve a term of supervised release?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  And when you're on supervised release

4    you're restricted to places you can go and things you can do

5    and you have to report to authorities on a regular basis?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  In your case a term of supervised release

8    is three years on count one, three years on two to ten, and

9    three years on 11 to 20.  You understand that?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  Do you also understand if you're on

12   supervised release and you violate a condition of your

13   supervised release, you can be brought back into court, and if

14   it's proved by a preponderance of the evidence that you did

15   violate a condition of your supervised release, you can be

16   sent back to jail for the entire term of your supervised

17   release?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Has anyone threatened you or threatened

20   anyone else or forced you in any way to plead guilty here

21   today?

22             THE DEFENDANT:  No, sir.

23             THE COURT:  How about summarize the plea agreement.

24             MR. WILLIAMS:  Thank you, Your Honor, may it please

25   the Court.

1          Your Honor, the first paragraph sets forth the charges the

2    defendant is pleading guilty to, the elements of those

3    offenses and the possible penalties which Your Honor has

4    already reviewed with the defendant.

5          Second paragraph states that the defendant understands

6    that monetary penalties can be imposed by the Court, that any

7    kind of fine or payments can be paid through schedules.  And

8    it states that he agrees to enter into a Bureau of Prisons

9    Inmate Financial Responsibility Program if he is sentenced to

10   a term of incarceration with an unsatisfied monetary penalty.

11         It sets forth the possibility of a special assessment,

12   sets forth details of how restitution is determined, and sets

13   forth the possibility of a fine.

14         The third paragraph states that the defendant understands

15   that the Government's obligations under the plea agreement are

16   contingent upon his abiding by federal and state law, and that

17   if he fails to comply with the terms of the plea agreement,

18   the Government can withdraw from the plea agreement, but he

19   will not have a right to withdraw his guilty plea.

20         The fourth paragraph sets forth a cooperation paragraph.

21   It sets forth that the defendant agrees to be fully truthful

22   and forthright with the federal, state and local law

23   enforcement agencies.  It then goes into detail about his

24   obligations and his necessity to cooperate; specifically, that

25   he must be truthful.  And it states that if he is not

1    truthful, the defendant understands that he will not be

2    permitted to withdraw his guilty plea, but the Government can

3    withdraw from the agreement, that he can not withdraw, that

4    any additional charges known to the Government can be filed,

5    the Government can ask for a maximum sentence, and the

6    Government can use any and all information he provided

7    pursuant to his agreement or under any proffer agreement, in

8    his prosecution.

9        The fifth paragraph indicates that as part of his

10   cooperation, the Government can submit him to a polygraph

11   examination and it's completely in the Government's discretion

12   to determine whether he has been truthful or has passed that

13   polygraph.

14       The sixth paragraph states that any self-incriminating

15   information the defendant provides as a result of his

16   cooperation and that is required by this agreement, although

17   it will be available to the Court, will not be used against

18   him in determining his guideline range.  This will not apply

19   or restrict any information that was known to the Government

20   prior to the date of this agreement concerning the existence

21   of prior convictions, in a prosecution for perjury or giving a

22   false statement, in the event that the defendant breaches any

23   terms of the plea agreement, or it can be used to rebut any

24   evidence or arguments offered by or on behalf of the

25   defendant.

1        The seventh paragraph states if the defendant cooperates

2    pursuant to the plea agreement and provides what the

3    Government deems to be substantial assistance, the Government

4    will file an appropriate 5K1.1 or 3553 -- sorry -- or a 35(b)

5    motion.

6        Now, the eighth paragraph, Your Honor, is a little

7    unusual.  It discusses the defendant's deposit of funds in

8    lieu of forfeiture.  And it details that on or about March 8th

9    the defendant deposited $247,251.61 with the Court for the

10   payment of restitution pursuant to a consent motion filed by

11   the parties, and states that in addition, the Government had

12   previously seized approximately $135,000 of funds from the

13   defendant's accounts.  And, Your Honor, that money was seized

14   and frozen by the Government when the crime was uncovered.

15   And it states the parties agree these seized funds will be

16   used to pay restitution, and forfeitures of those funds will

17   be applied to the victims in this case.

18       It further details that that restitution obligation is to

19   the Berkeley County School District, and that he will

20   otherwise voluntarily surrender to and not contest any

21   forfeiture of any properties or portions therefor that are

22   otherwise forfeitable.  Your Honor, it then continues the

23   detailed information about forfeiture and sets forth his

24   obligations and details of any kind of forfeiture regarding

25   specific assets.

1          MR. HUBBELL:  Judge, could I just add in there,

2     additionally, we made a second deposit for restitution on

3     December 4th of last year in the amount of $86,025.67.

4          THE COURT:  Do you want to write that in the plea

5     agreement?

6          MR. WILLIAMS:  We can, Your Honor, we'll just

7     incorporate it on the record.

8          THE COURT:  That's fine.  Doesn't make any

9     difference.  Go ahead and pencil it in; if not, don't worry

10    about it.

11         MR. WILLIAMS:  Ninth paragraph states the defendant

12    understands and agrees that by pleading guilty to these

13    offenses he will be prohibited from controlling or

14    participating in the conduct or affairs of any federally

15    insured bank or credit union.

16        The tenth paragraph states that he has met -- represents

17    to the Court he has met with his attorney on a sufficient

18    number of occasions for a sufficient period of time to discuss

19    his case.  He understands what his rights are, and has

20    discussed the rights he's giving up by pleading guilty, with

21    his attorney.  And that his decision to plead guilty is

22    voluntary and not a result of any pressure or intimidation.

23        The eleventh paragraph, Your Honor, is an appeal waiver.

24    States that he is aware that under 18 U.S.C. 3742 and 28

25    U.S.C. 2255, he has certain rights to contest his conviction

1    or sentence; he acknowledges these, and, in exchange for the

2    concessions made by the Government in this plea agreement,

3    waives his right to contest either the conviction or the

4    sentence in any direct appeal or postconviction action,

5    including any proceedings under 28 U.S.C. 2255.  However, this

6    waiver does not apply to claims of ineffective assistance of

7    counsel, prosecutorial misconduct or future changes in the law

8    that affect the defendant's sentence.

9        The twelfth paragraph is a FOIA waiver; states that he

10   waives all rights to request, from any department or agency,

11   records that may be sought under the Freedom of Information

12   Act.

13       The thirteenth paragraph states that the parties admit

14   this plea agreement contains the entire agreement of the

15   parties and supercedes any prior agreements.

16            THE COURT:  Mr. Thomas, are those the terms of your

17   plea agreement as you understand them, sir?

18            THE DEFENDANT:  Yes, sir, I do.

19            THE COURT:  This is your signature on the last page

20   of your plea agreement?

21            THE DEFENDANT:  I can't see.  Yes, sir.

22            THE COURT:  Okay.  And before you signed it did you

23   understand what you agreed to do?

24            THE DEFENDANT:  Yes, sir.

25            THE COURT:  And you understand what the Government's

1    agreed to in return?

2                    THE DEFENDANT:  Yes, sir.

3                    THE COURT:  And going back to paragraph 11, you

4    understand that I told you earlier that you have -- you might

5    have a right to appeal any sentence I might give you?

6                    THE DEFENDANT:  Yes, sir.

7                    THE COURT:  But you've given up a lot of that right.

8    You can only appeal from this sentence for ineffective

9    assistance of your lawyer, prosecutorial misconduct and

10   changes in law.

11                   THE DEFENDANT:  Yes, sir.

12                   THE COURT:  You have a right to attack the sentence

13   under 2255 or habeas corpus, and you've given up most of that

14   right.  You can only attack for the same three reasons,

15   ineffective assistance of counsel, prosecutorial misconduct,

16   or changes in the law.  You understand that?

17                   THE DEFENDANT:  Yes, sir.

18                   MR. HUBBELL:  Your Honor, could I approach the bench

19   for a brief side bar?

20                   THE COURT:  Sure.

21                   MR. HUBBELL:  With Mr. Williams?

22        (Discussion held off the record.)

23                   THE COURT:  Has anyone made you any promise other

24   than your plea agreement to induce you to pled guilty?

25                   THE DEFENDANT:  No, sir.

1          THE COURT:  Has anyone made any prediction, prophecy

2    or promise as to what your sentence is going to be?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  How about giving me a factual basis, Mr.

5    Williams, please, sir.

6          MR. WILLIAMS:  Thank you, Your Honor.  It's a little

7    bit longer than usual, so bear with me.

8          THE COURT:  I have plenty of time.

9          MR. WILLIAMS:  Your Honor, the defendant was the

10   chief financial officer with the Berkeley County School

11   District from at least 2010 through 2016, and certainly

12   through the end of 2016, and certainly the time covered by the

13   information that was filed in this case.

14       As the chief financial officer, he was responsible for

15   receiving invoices for services rendered to the School

16   District and remitting payment to vendors who had submitted

17   such invoices.

18       The scheme, Your Honor, is basically set forth in count

19   one, and that scheme involved essentially remitting payment to

20   certain vendors in amounts that was greater than the payment

21   that was due.

22       Effectively what the defendant did was inflate payments

23   that were being given to vendors, so that a rebate or refund

24   would be issued off those accounts.  The resulting checks that

25   were written for the overpayment were remitted back to the

1    School District; however, they were not deposited in the

2    School District accounts.  Because of the defendant's

3    position, he understood that there was a way to convert those

4    monies to his own use without anybody noticing it.  So there

5    wasn't really a place in the accounting for those checks to be

6    deposited.  And that he began converting those checks over to

7    his own use.  So he created a scheme where he could create an

8    overpayment, then have that overpayment embezzled from the

9    School District by depositing it into his own accounts.

10        There's an example of that, Your Honor, contained -- and

11   I'll use count ten as an example, that's a money laundering

12   count.  There, the vendor was the Berkeley Electric

13   Cooperative.  At the end of 2016 they sent an overpayment

14   check to the Berkeley County School District; I think that was

15   for $61,824.91.

16        So the defendant would have intentionally overpaid the

17   Berkeley Electric Cooperative in that amount, knowing that

18   when they had too much money, they would send back the

19   overpayment or rebate check.

20        In that instance, Your Honor, there was actually some

21   attention given to the these charges.  It was sort of looked

22   at as being a savings to the School District, and in that

23   instance there was a press release of sorts and a picture in

24   the paper of the defendant and people from the Cooperative

25   showing the check that they were going to save money for the

1    School District on.

2         So although there was some publicity to these checks,

3    there wasn't really any kind of internal accounting for them.

4    So the defendant would then take those checks that were

5    overpayments and then deposit them not into any kind of School

6    District account, but into accounts that he was using for his

7    own personal use.

8         The methodology he used to convert those checks varied.

9    At times he would deposit checks directly into his personal

10   bank account, but most of the time the scheme involved the

11   laundering of the funds to sort of disguise the source and

12   then make it harder to trace the amounts.  Most recently, I

13   think, and primarily as referenced in the information, he

14   would convert first those overpayment checks into money

15   orders.  So he had a bank employee who would take the Berkeley

16   County checks, convert them into money orders, often several

17   money orders, and then he would take the money orders and

18   deposit those into a third account which would be his -- a

19   personal credit card account.

20        So he took the checks, broke them into money orders, then

21   deposited them into a credit card account.  And that credit

22   card account he was using for personal expenses.  So he would

23   either be charging things on the credit card account, which

24   was not generally the case; more often what he would do is he

25   would create a positive balance in the credit card account,

1    then he would write a check off the credit card account, like

2    a convenience check that credit cards offer, and then deposit

3    that check into his personal checking account.

4        So we often saw two or three different ways he was moving

5    money through the accounts.  But in every circumstance when

6    the money was converted, often it was laundered before it was

7    converted to his own use, into his personal checking account.

8        I will say, Your Honor, there was some times that he used

9    the checks directly to pay off loans.  We saw him paying off

10   car loans or making deposits or down payments on vehicles.

11   But the FBI, who the agents are here, analyzed the accounts

12   that were involved, and found that for the most part, the

13   money was used on personal expenses, things like travel and

14   private club memberships.

15       So count one, Your Honor, describes the scheme and theft

16   that I just talked about.  As stated in the indictment, the

17   School District receives federal funding over $10,000 a year,

18   and did receive that amount in every year set forth in the

19   indictment.

20       His scheme resulted in checks that were traced over at

21   least a five-year period to well over $450,000 in loss.

22       Other relevant conduct amounts, Your Honor, we anticipate

23   being a part of this case at sentencing.  Because of the

24   statute of limitations, we did not include all those amounts,

25   but we expect that there were some charges in State Court that

1    may be considered relevant conduct, and we'll sort of cross

2    that bridge when we get to it at sentencing.  So that is count

3    one.

4        Count two to ten, Your Honor, reflect the deposit of the

5    embezzled checks.  The underlying unlawful act is the count

6    one embezzlement.  And so counts two through ten reflect the

7    money laundering, as I described.  He used several bank

8    accounts to deposit proceeds to create money transactions,

9    converting funds to money orders, depositing them into credit

10   card accounts and making multiple monetary transactions to

11   move the funds from his credit card to his personal accounts

12   for use.

13       Counts two through ten reflect individual checks that the

14   defendant embezzled, then deposited.  The accounts themselves

15   list the dates of the check, the date of the monetary

16   transaction, the payor and the total amount.  And each

17   instance the checks were over $10,000, which is required under

18   18 U.S.C. 1957.

19       And I won't go through each of the counts, but each of

20   those talks about the specific amount of the checks, generally

21   between 30 and $50,000, with some being up to $60,000.  And

22   that makes the total amount, as I mentioned earlier, closer to

23   the $450,000 amount total.

24       The second set of charges, Your Honor, the next set of

25   charges are counts 11 through 20.  This is a little bit

1    different scheme.  It's a kickback scheme, Your Honor, it's

2    charged as honest services wire fraud, I think what we

3    commonly refer to as public corruption.  And it reflects what

4    investigators found during their investigation.  So as they

5    investigated the embezzlement, they also saw in the

6    defendant's bank records several checks that were for $2000

7    each.  And each one of those checks is reflected as a separate

8    count in counts 11 through 20.

9        These checks, Your Honor, were deposited directly into the

10   defendant's personal bank account.  They were written to him

11   by an insurance agent that he did business with, and the agent

12   was selling insurance policies to the School District, and the

13   defendant controlled those contracts and those sales and

14   directly worked with that vendor.

15       There was no legitimate reason for those direct payments

16   from the vendor to the defendant, Your Honor, and upon further

17   investigation it was determined that those checks were, in

18   fact, kickbacks paid to the defendant.  So that he would trade

19   on his official acts or his -- the honest services that he

20   owed, effectively paying the insurance agent.  In exchange,

21   the insurance agent was effectively paying the defendant in

22   exchange for that business.

23       The total amount of those payments were $32,000 and those

24   were made via wire transmission, multiple electronic

25   transmissions, as is required under the statute.

1    Your Honor, the defendant was interviewed early in this

2    case.  He was interviewed by Special Agent Joseph Hamski, who

3    is here.  This was almost immediately after the conduct was

4    found, because we understood that this would have to be

5    disclosed to the School District early, understanding he was

6    still the CFO at the time.

7    In that interview the defendant at first denied some of

8    his conduct, but once he was confronted with the sort of

9    details that were available, he readily admitted that he had

10    engaged in the theft and the embezzlement.  And although he

11    did not know the exact amount, his estimate was -- he said he

12    wasn't sure how much it was, but it was consistent with what

13    agents had suspected.

14            THE COURT:  Mr. Thomas, do you agree with the

15    prosecutor's summary about your embezzlement and kickback

16    schemes?

17            THE DEFENDANT:  I do, sir.

18            THE COURT:  Anything -- You agree to that,

19    Mr. Hubbell, too?

20            MR. HUBBELL:  Judge, we're in agreement with that.

21            THE COURT:  Okay.  It's the finding of the Court in

22    the case of United States of America versus Brantley Denmark

23    Thomas, III, that Mr. Thomas is fully competent and capable of

24    entering an informed plea, that his plea of guilty is a

25    knowing and voluntary plea, supported by an independent basis

1    in fact, containing each of the essential elements of the

2    offense.  The plea is, therefore, accepted, and he is now

3    adjudged guilty of those offenses.

4        Please sign this for me, Mr. Thomas.

5            THE CLERK:  May it please the Court, the defendant,

6    Brantley Denmark Thomas, III, acknowledges receipt of a copy

7    of the information; and, after arraignment, pleads guilty to

8    the information in open court.  Signed defendant, Brantley

9    Thomas, III, January 16th, 2018.

10            THE COURT:  Okay.  Anything else?

11            MR. HUBBELL:  No, Your Honor, thank you.

12

13        (Court adjourned at 11:32 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

1                    **REPORTER'S CERTIFICATION**

2

3            I, Debra L. Potocki, Court Reporter for the United

4       States District Court for the District of South Carolina,

5       hereby certify that the foregoing is a true and correct

6       transcript of the stenographically recorded above

7       proceedings.

8

9

10

11      S/Debra L. Potocki
        _____
12      Debra L. Potocki, RMR, RDR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25